SINCLAIR REFINING COMPANY *v*. BUMPAS.

4-4497

Opinion delivered January 25, 1937.

*Malcolm W. Gannaway* and *Jones & Wharton,* for appellants.

*Fred M. Pickens,* for appellee.

SMITH, J. This is the second appeal in this case, the opinion on the former appeal being reported in 191 Ark. at page 571, 87 S. W. (2d) 29. The facts out of which the case arose are there recited and will not be here repeated.

At the trial from which this appeal comes the case was submitted to the jury under instructions conforming to the law as announced in the former opinion and to which no objection was made. At the former trial a verdict in favor of the defendants was returned under the direction of the court, which was reversed. At the trial from which this appeal comes there was a verdict and judgment in favor of the plaintiff for $12,100, which was the exact amount for which judgment was prayed.

At the former trial, the defendant appears to have introduced no testimony except one witness who testified as to the extent of plaintiff's injury. At the trial from which this appeal comes there was testimony contradictory to that of the plaintiff as to the cause and manner of the injury. But as plaintiff's testimony was substantially the same at both trials, and as we held in the former appeal that this testimony was sufficient to make a case for the jury, it remains so notwithstanding the conflict in the testimony.

The principal conflict in the testimony relates to the repair of the broken plank through which plaintiff fell. The testimony establishes beyond question that one of these planks, which was a 2 x 6, was broken, and that defendant was aware of that fact. Indeed, the defense is that it had been repaired by nailing over the broken plank another plank, which was a 1 x 6; in other words, that a 1-inch plank had been nailed over the 2-inch plank. If so, the 1-inch plank broke at the exact place on the platform where the 2-inch plank had broken. It was insisted that plaintiff admitted that he had fallen through two planks, and some of his testimony is somewhat ambiguous, but he was asked: "Q. Don't you know whether you fell through one plank or two planks?" and he answered: "I fell through one plank." Accepting this testimony as true, which the jury had the right to do, the finding is supported that the repair had not been made, and the instructions, to which no objection is made, declared the law applicable to that fact.

The most serious question on this appeal is whether the testimony is sufficient to support so large a judgment for damages. It is undisputed that appellee's leg was badly skinned as he fell through the board. His leg became infected, and he was confined to his bed until the 1st of November. The date of his injury was June 20. His leg was inflamed from his knee to his hip and required lancing about ten times. He was unable to sleep except under the influence of opiates, which were administered two or three times each day. His groans were heard all over the boarding-house where he was confined and could be heard in the street. He had never been able to do any work up to the date of the trial, which was about two years after the date of the injury. He had previously been strong and able-bodied, and Bacus, one of the defendants, stated that plaintiff was the best hand he ever had. Appellee testified that he could get around by November, 1934, by using two crutches, and later by using only one, but about June, 1935, he discarded his crutches and used his leg, as his doctor directed, but even now he is required to occasion-

ally use a crutch to get around, and he suffers such pain at times that he can hardly put his foot on the floor.

Plaintiff's doctor testified that for a number of days he visited plaintiff from one to three times each day. This frequency of visitation was required to administer opiates. For some time, he did not know whether the patient would recover. The doctor expressed the opinion that plaintiff "suffered as much pain as any person I ever attended in my life," and that "there is an injury to the knee joint from the infection following this trouble that will likely last him all his life," and, in his opinion, plaintiff will never again be able to perform manual labor. Plaintiff was forty years old at the time of his injury, and testified that his earnings had never been less than sixty-five and sometimes as high as one hundred and fifty dollars per month. The doctor testified that his bill was $360, but that he had not charged for half of his visits.

Under this testimony we are unable to say that the judgment is so excessive that it must be reduced before it can be permitted to stand. No error appears, and the judgment must be affirmed. It is so ordered.